## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

**JACQUELINE JACKSON,**
an individual,

    **Plaintiff,**

              **CASE NO: 3:10-cv-01705-JCH**

**v.**

**ENHANCED RECOVERY**
**CORPORATION,**

    **Defendant.**

## DEFENDANT'S MOTION TO DISMISS ALL COUNTS OF PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Enhanced Recovery Corporation ("Defendant"), moves to dismiss the Complaint filed against it by Jacqueline Jackson ("Jackson" or the "Plaintiff"). Plaintiff alleges that Defendant's attempt to collect a debt violated the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 et seq., as well as the Connecticut General Statutes, C.G.S. § 36a-800 et seq., § 36a-645 et seq. and § 42-110a et seq.[1]  See Exhibit A.  Plaintiff specifically alleges Defendant failed to provide Plaintiff with her Validation Notice as required by the FDCPA.  However, as clearly shown by the Validation Notice attached to Plaintiff's complaint, Defendant complied with its obligations to provide Plaintiff with her Validation Notice.  See Exhibit A to Exhibit A. The following memorandum is offered in support of the motion to dismiss.

---

[1] C.G.S. § 36a-645 et seq. constitutes the Creditor Collection Practices Act (the "CCPA"). C.G.S. § 36a-800 et seq., constitutes the Consumer Collection Agency Act (the "CCAA"). C.G.S. § 42-110a et seq. constitutes the Connecticut Unfair Trade Practices Act (the "CUTPA").

## MEMORANDUM OF LAW

This memorandum consists of a discussion of the standard for granting a motion to dismiss, a statement of the material facts contained in or attached to Plaintiff's Complaint, and a section setting forth the relevant law and its application to this case.

## I.   STANDARD FOR MOTION TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir.2008) (quotations omitted). In considering a Rule 12(b)(6) motion to dismiss, the Court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir.2008) (internal quotations omitted).  However, the court need not give credence to plaintiff's "legal conclusions, deductions or opinions couched as factual allegations." See In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir.2007) (citation omitted). In addition, the Court need not credit conclusory statements that are unsupported by factual allegations. See, Otor, S.A. v. Credit Lyonnais, S.A., 2006 WL 2613775, at *2 (S.D.N.Y.); see also Davey v. Jones, 2007 WL 1378428, at *2 (S.D.N.Y.) (citation omitted) ("[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not suffice to defeat a motion to dismiss.").

In addition to considering the factual allegations in the complaint, the Court may also consider "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," as well as any document not attached or incorporated by reference if "the complaint relies heavily upon its terms and effect, [rendering] the document

'integral' to the complaint." <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152 (2d Cir.2002) (internal citations omitted).   In fact, if an attached exhibit contradicts the allegations in the complaint, the exhibit controls.  <u>See</u> <u>Rapoport v. Asia Elecs. Holding Co.</u>, 88 F.Supp.2d 179, 184 (S.D.N.Y.2000) ("If these documents contradict the allegations of the amended complaint, the documents control."); <u>Matusovsky v. Merrill Lynch</u>, 186 F.Supp.2d 397, 400 (S.D.N.Y.2002) ("If a plaintiff's allegations are contradicted by [a document attached to the complaint as an exhibit], those allegations are insufficient to defeat a [Rule 12(b)(6)] motion to dismiss."); <u>In re Bristol-Myers Squibb Sec. Litig.</u>, 312 F.Supp.2d 549, 555 (S.D.N.Y.2004) (If the plaintiff alleges facts that are contradicted by an attached exhibit, the court "need not accept as true an allegation that is contradicted by documents on which the complaint relies.").

Defendant submits that the facts alleged in Plaintiff's complaint coupled with the statements contained in Plaintiff's Exhibit to the complaint, fail to plead a claim for relief that is plausible on its face and therefore such claims should be dismissed.

## II.    MATERIAL FACTS[2]

1.    The Plaintiff is a "consumer debtor" and/or "consumer" as defined by the Connecticut General Statutes and/or the FDCPA.  <u>See</u> Exhibit A.

2.    Defendant is a "debt collector" as defined by the FDCPA.  <u>Id.</u>

3.    Defendant sent Plaintiff a letter in an attempt to settle a debt on June 4, 2010 (the "Letter").  <u>See</u> Exhibit A.

4.    The Letter was attached to Plaintiff's complaint as Exhibit "A".  <u>See</u> Exhibit A to Exhibit A.  Furthermore, all of Plaintiff's allegations concern the specific language and format of the Letter and, therefore,   and the Letter is integral to Plaintiff's allegations.  <u>See</u> Exhibit A.

---

[2]  For purposes of this motion only, Defendant accepts as true the factual allegations of the Complaint reiterated herein.

5.     The FDCPA requires that a debt collector notify a consumer of his/her rights to validate a debt within five days of the debt collector's initial communication with the consumer. Id.

6.     The Letter contained the 30-day validation notice required by the FDCPA on the backside of the letter. Id.

7.     Specifically, the Letter is a two-sided document with the front side described as "REPAYMENT OPPORTUNITY" disclosing the original amount of the debt as $18,144.48; various points of contact including a toll free telephone number, facsimile number, address and website; and settlement options. See Exhibit A to Exhibit A.  As such, the body of the Letter provides various settlement options. Id.

8.     The settlement options language contained in the Letter reads as follows:

> We recognize that you may have gone through some financial difficulty and have been unable to repay your account.  We would like to offer you a few positive and flexible options to satisfy your account.
>
> Option 1: Settlement: $10,886.69, please remit by 06/19/10.
>
> Option 2: Settlement:  $11, 793.91, payable over the next 2 months.
>
> Option 3: Settlement: $12,701.14, payable over the next 3 months.
>
> . . . . . . . . . . . . .
>
> P.S. We are very interested in helping you resolve this debt.  If one of the above options does not suit your financial situation, please contact one of our recovery specialists to assist you in setting up a repayment plan that will.

Id.

9.     On the reverse side of the Letter, Defendant sets forth Plaintiff's "**FEDERAL VALIDATION NOTICE**" in bold print, capitalized letters and larger font than the settlement options language or any other language within the body of the letter. Id.

10.     Although the "**FEDERAL VALIDATION NOTICE**" is set forth on the backside of the Letter, Plaintiff is apprised of the Validation Notice by the following language contained on the front of the Letter:  "**NOTICE – SEE REVERSE SIDE FOR IMPORTANT NOTICES AND CONSUMER RIGHTS**". Id. (emphasis in the original).  Such language is set forth in bold print and capitalized letters. Id.

4

11.     The Plaintiff alleges that the Letter's format and/or language violate the FDPCA and the Connecticut General Statutes by overshadowing the Validation Notice also contained in the Letter. Id.

12.     Although Plaintiff fails to specify the language she believes overshadows the Federal Validation Notice, Plaintiff alleges that the unspecified language created a tone of immediacy. See Exhibit A.

13.     On the other hand, Plaintiff takes specific issue with the fact that the Validation Notice is disclosed prominently on the backside of the Letter and that Defendant also included state-specific consumer rights in addition to Plaintiff's federal consumer rights. Id.

14.     Nowhere in the Letter does language exist that indicates or suggests that Plaintiff has a set time in which to pay the debt or even respond to the Letter. See Exhibit A to Exhibit A. Instead, the Letter provides the Plaintiff with various settlement options as well an option to contact the Defendant to create a personalized settlement plan. Id.

15.     Contrary to Plaintiff's allegations, Defendant's Letter not only makes reference to the Validation Notice but tracks the exact language of the FDCPA's Validation Notice in its entirety in enlarged and capitalized font. Id.

## III.   ANALYSIS AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff claims the language and format of Defendant's Letter overshadowed the Validation Notice required by FDCPA and, as a result, violated not only the FDCPA but also the CCPA, the CCAA and the CUTPA.  However, Plaintiff fails to assert the necessary allegations that would support a claim for a FDCPA, CCPA, CCAA or CUTPA violation.   Each is addressed below.

A.     Plaintiff Fails to State a Claim Under the FDCPA.

Plaintiff brings this action pursuant to the 15 U.S.C. §1692g of the FDCPA. Section 1692g requires a debt collector seeking to collect a debt from a consumer to send the consumer a written Validation Notice containing:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any

portion thereof, the debt will be assumed to be valid by the debt collector;[3]

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

See 15 U.S.C. § 1692g (a).   The Validation Notice must be sent within five days of the debt collector's initial communication with the consumer, unless the required information is contained in the initial communication that a debt collector has with a consumer. See 15 U.S.C. § 1692g (a).

In determining whether a collection notice violates §1692g, an objective standard, measured by how the "least sophisticated consumer" would interpret the notice, is applied. See Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir.2005); Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir .1996); Clomon v. Jackson, 988 F.2d 1314, 1318-19 (2d Cir.1993).   This standard is intended to protect even the most naive debtors, while simultaneously shielding debt collectors from liability for " 'bizarre or idiosyncratic' interpretations of collection notices." Clomon, 988 F.3d at 1319 (quoting Rosa v. Gaynor, 784 F.Supp. 1, 3 (D.Conn.1989)).   Although the least-sophisticated-consumer standard is to protect even gullible consumers, the least sophisticated consumer is also "presumed to possess a

---

[3] The thirty-day period during which a consumer has the right to dispute the debt and send a written notice to that effect shall be referred to throughout this decision as the "Debt Validation Period".

rudimentary amount of information about the world and a willingness to read a collection notice with some care." Greco, 412 F.3d at 363 (quoting Clomon, 988 F.2d at 1319). However, regardless of the least-sophisticated-consumer standard, a Validation Notice that "tracks the language of the statute" is presumed to comply with the FDCPA. Greco, 412 F.3d at 365-66.

However, a timely Validation Notice containing the statutorily required information may still violate the FDCPA if language in the letter "overshadows or contradicts" other language informing a consumer of his or her rights. Clomon, 988 F.3d at 1319 (citations omitted). "A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights." Savino v. Computer Credit Inc., 164 F.3d 81, 85 (2d Cir.1998). In addition, a collection notice may be found to be deceptive if it "can be reasonably read to have two or more different meanings, one of which is inaccurate." Russell, 74 F.3d at 35 (citing Clomon, 988 F.2d at 1319).

In this case, Plaintiff does not dispute the fact that the Letter was timely and contained all of the statutorily required information, including the Validation Notice, concerning a consumer's rights required by § 1692g. Indeed, the Validation Notice closely tracks this information and therefore is presumed to comply with the FDCPA. Instead, Plaintiff principally argues that the Letter overshadowed the Validation Notice for the following reasons: (1) the settlement options contained on the front side of the Letter overshadowed the 30 day Validation Notice as the options had a quality and tone of immediateness; (2) the front of the Letter did not refer to the 30 day Validation Notice or, in other words, the Validation Notice was disclosed on the backside of the Letter; (3) the notice provision on the front of the Letter referring the Plaintiff to the Validation Notice and her consumer rights was overshadowed by the print on the front and

backside of the Letter; and (4) the Validation Notice was overshadowed by the Letter's disclosure of state-specific consumer rights and laws. As set forth below, all of these allegations are insufficient as a matter of law.

      1.     <u>Validation Notice Overshadowed by Settlement Options.</u>

Plaintiff claims that the settlement offers contained in the Letter overshadow or contradict the Validation Notice set forth on the back of the Letter. However, courts within this Circuit have rejected this argument by holding, as a matter of law, that settlement offers made in a debt collector's initial communication do not overshadow or contradict a Validation Notice in the same communication. <u>See Harrison v. NBD</u>, 968 F.Supp. 837 (E.D.N.Y.1997); <u>Omogbeme v. Risk Mgmt. Alternatives, Inc.</u>, 2003 WL 21909773 (E.D.N.Y.); <u>Gervais v. Riddle & Assocs.</u>, 2007 WL 867986 (D.Conn.).

In <u>Harrison</u>, the debt collector's original communication contained a discounted settlement offer along with the Validation Notice. The Plaintiff claimed that the settlement offer overshadowed the Validation Notice and the defendant moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6). The Court found that the discounted settlement offer did not demand immediate payment or even "impart the impression that the plaintiff must dispute the debt in less than thirty days" and therefore did not overshadow the Validation Notice. <u>Id.</u> at 848. The Court further held that expiration of the settlement offer within the 30 day Debt Validation Period did not overshadow the validation notice, stating:

> If a debtor chooses to reject the discount offer, at worse, she or he would be liable for the original amount of the debt. Consequently, the Court concludes that the least sophisticated consumer would not construe [defendant's] discount offer as overshadowing or contradicting the validation notice.

<u>Id.</u>

Also, in Omogbeme, the debt collector's initial communication included a settlement offer for a discounted amount within the Debt Validation Period and disclosed the Validation Notice on the backside of the communication. Omogbeme, 2003 WL at *2. The Plaintiff claimed that the offer overshadowed the Validation Notice and the defendant moved to dismiss pursuant to Rule 12(b)(6). Id. The court held that neither the settlement offer with an expiration within the Debt Validation Period nor the inclusion of the Validation Notice on the reverse side of the communication overshadowed the validation notice. Id. at *3. The court reasoned that the settlement offer, even if viewed through a least sophisticated consumer's eyes, could not be construed to be a demand of payment by a date certain. Id. The court also reasoned that placement of the Validation Notice on the backside of the communication did not violate the FDCPA as courts within the Second Circuit have recognized that the "FDCPA does not prescribe any particular form, sequence, location or type size. Id. (quotation omitted).

Similarly, in Gervais, the debt collector's initial communication included a settlement offer for a discounted amount if paid within thirty days of the validation notice and therefore within the Debt Validation Period. The Plaintiff claimed that the settlement offer overshadowed the Validation Notice and the defendant moved for summary judgment. The Court, upon reconsideration, held that "the mere existence of a settlement offer in a validation notice is insufficient to constitute an overshadowing claim under the FDCPA as a matter of law." The Court reasoned that the settlement and debt validation opportunities were not mutually exclusive. Moreover, the Court noted that even if the opportunities were mutually exclusive, that the settlement offer was clearly distinguishable from the validation notice.[4]

---

[4] It should also be noted that courts have recognized that a prohibition of settlement offers in an initial communication containing Validation Notices "would likely dissuade debt collectors from providing consumers with discounted settlement offers - a result that would be both 'unwise and against the consumers' best interests.'" Gervais, 2007 WL at *6 (quoting Sarder v. Acad. Collection Serv., Inc., 2005 WL 615831, at *3 (E.D.N.Y.).

Applying the above case law to the issue at hand, Defendant's inclusion of settlement options in its initial communication to the Plaintiff does not overshadow the Validation Notice. Accordingly, Plaintiff's claims fail as a matter of law and should be dismissed.

2.    Validation Notice Overshadowed by Placement on Reverse Side.

Plaintiff also claims that disclosing the Validation Notice on the reverse side of the initial communication results in the Validation Notice being overshadowed. However, it is assumed that even the least sophisticated consumer will read a debt collection letter in its entirety. McStay v. I.C. System, Inc., 308 F.3d 188, 191 (2d Cir. 2002). Moreover, courts have consistently held that disclosing the validation notice on the backside of an initial communication does not constitute overshadowing where the front side of the communication refers the consumer to the reverse side of the communication. Shapiro v. Dun & Bradstreet Receivable Mgmt. Services, Inc., 209 F.Supp.2d 330 (S.D.N.Y. 2002) (initial communication disclosing Validation Notice on reverse side but stating on front side to "SEE REVERSE SIDE FOR IMPORTANT INFORMATION" did not result in overshadowing); Rios v. Pinnacle Financial Group, Inc., 2006 WL 2462899, *3 (S.D.N.Y.) (initial communication disclosing debt validation language on reverse side but directing the consumer on the front side of the communication in capital letters - in print at least as large as any other language on the page - to see the reverse side for important consumer information does not result in overshadowing); Sorey v. Computer Credit, Inc., 2006 WL 1896401, at *2 (S.D.N.Y.) (no FDCPA violation where collection letter with validation notice disclosed on the reverse side included language on the front side referring consumer to the notice in solid capital letters with a slightly different font that was prominent and easily read); Omogbeme, 2003 WL at * 8 (collection notice providing

settlement options within the 30 day Debt Validation Period and referring consumer to backside of notice where the Validation Notice was disclosed did not violation the FDCPA); <u>Miller v. Wolpoff & Abramson, L.L.P.</u>, 321 F.3d 292, 310 (2d. Cir. 2003) (overshadowing is not created simply because the debt validation language is included on the reverse side of an initial communication).

Applying the above case law to the Letter, the Letter does not violate the FDCPA as it is undisputed that Defendant disclosed the Validation Notice in full on the backside of its initial communication.  Furthermore, as in the cases described above, Defendant's inclusion of the Validation Notice on the backside of the communication does not violate the FDCPA as Defendant also included language referring the Plaintiff to the Validation Notice on the front of the Letter.  Specifically, the Letter states in bold font and accented in capital letters "**NOTICE – SEE REVERSE SIDE FOR IMPORTANT NOTICES AND CONSUMER RIGHTS**". Accordingly, Plaintiff's claims fail as a matter of law and should be dismissed.

      3.    <u>Reference to Validation Notice Overshadowed by Print.</u>

Plaintiff also claims that Defendant's notice to Plaintiff on the front of the Letter to refer to the backside of the Letter for important notices and consumer rights is overshadowed by both the print on the front and back of the Letter.  Plaintiff's claims have no merit as the Notice language itself is presented in bold font and accented by capitalized letters in order to bring a unique emphasis to the notice. No other language on the front of the Letter is emphasized in this manner.  The language on the backside of the Letter - the actual Validation Notice - is presented in an enlarged font and accented in capital letters in order again to emphasize the importance of the notice.  The sole purpose of the reference is for the Plaintiff to read the Validation Notice. Therefore, even if the print of the Validation Notice was so prominent that it caused the Plaintiff

to skip straight to the Validation Notice then Defendant complied with the FDCPA. Accordingly, Plaintiff's claims fail as a matter of law and should be dismissed.

    4.    <u>Validation Notice Overshadowed by Disclosure of State-Specific Consumer Rights and Laws.</u>

Plaintiff last argues that Defendant's inclusion of state-specific consumer laws overshadows Defendant's Validation Notice.  However, collection notices that contain state-specific provisions setting forth rights available under state law do not violate the FDCPA. <u>Jackson v. Immediate Credit Recovery, Inc.</u>, 2006 WL 3453180 (E.D.N.Y.) (dismissing Plaintiff's claim that state-specific disclosures violate the FDCPA finding it "unlikely that an unsophisticated consumer would bother to read technical language addressed to residents of another state" and even "more unusual for that unsophisticated consumer to parse the language of the notice" leading to a confusing determination); <u>Brown v. ACB Bus. Servs., Inc.</u>, 1996 WL 469588 (S.D.N.Y.) (dismissing Plaintiff's claim that state-specific disclosures violate the FDCPA); <u>White v. Goodman</u>, 200 F.3d 1016, 1020 (7th Cir.2000) (collection letter that provided state-specific notifications did not violate the FDCPA finding that if was "fantastic conjecture" to argue that a consumer could be confused by the disclosures); <u>Morse v. Dun & Bradstreet, Inc.</u>, 87 F.Supp.2d 901, 903 (D.Minn.2000) (collection letter that provided state-specific notifications in chart form did not violate the FDCPA because the consumer would have to take an "improbable sequence" of steps that exceed the "level of reasonableness imposed by the least sophisticated standard" in order to reach a determination that the laws were impermissibly confusing).

Applying the case law above to the present case, Defendant's disclosure of state-specific laws does not violate the FDCPA.  Accordingly, Plaintiff's claims alleging that the Defendant

violated the FDCPA are insufficient as a matter of law and should be dismissed.

     B.         Plaintiff Fails to State a Claim Under the CCPA, CCAA and the CUTPA.

Instead of alleging that Defendant violated specific provisions of the CCPA, CCAA or the CUTPA, Plaintiff generally refers to broad sections of the acts. Specifically, Plaintiff claims Defendant violated C.G.S §§ 36a-800 et seq., 36a-645 et seq. and 42-110a et seq. Sections 36a-800 et seq. constitutes the CCAA, sections 36a-645 et seq. constitutes the CCPA, and sections 42a-110a et seq. constitutes the CUTPA. Each act is addressed below.

     1.         The CCAA and the CCPA.

Plaintiff's claims under the CCAA and CCPA fail as a matter of law as neither provide for a private cause of action. See Conn. Gen. Stat. §§ 36a-645 - 36a-647; 36a-800 - 36a-810; Evanaukas v. Strumpf and Siegel, 2001 WL 777477, at *4, fn. 2 (D.Conn.). Instead, both acts prohibit unfair and deceptive collection tactics but provide only for enforcement by the Commissioner. Id. As such, Plaintiff has no standing to bring a claim under either the CCAA or the CCPA and therefore her claims should be dismissed.

     2.         The CUTPA.

The CUTPA prohibits any person from engaging in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. See C.G.S. § 42-110b. Although Plaintiff does not specify exactly how Defendant violated the CUTPA, the only allegations set forth in Plaintiff's complaint are that Defendant's Letter overshadowed the Validation Notice. As such, Plaintiff at most asserts that her claims of overshadowing constitute an unfair or deceptive act or practice in the conduct of any trade or commerce. As described earlier, Defendant's Letter did not overshadow the Validation Notice and therefore did not violate the FDCPA. As such, the Letter cannot constitute an unfair or deceptive act under the CUTPA. Accordingly, Plaintiff's claims fail as a matter of law and should be dismissed.

Furthermore, to state a claim under the CUTPA, a plaintiff must demonstrate that he or she suffered "any ascertainable loss of money or property, real or personal," due to an unfair or deceptive practice. See C.G.S. § 42-110g(a). While the ascertainable loss is not necessarily equivalent to a precise figure of actual damages, this requirement "is a threshold barrier which limits the class of persons who may bring a CUTPA action." Hinchliffe v. American Motors Corp., 184 Conn. 607, 440 A.2d 810, 815 (Conn.1981); see also Maguire v. Citicorp Retail Services, Inc.), 1997 WL 280540, at *5 (D.Conn.), aff'd in part, vacated in part and remanded in part on other grounds, 147 F.3d 232 (2d Cir. 1998).   Although CUTPA does not require a plaintiff to allege or prove the amount of the loss, ascertainable loss has been interpreted by the Connecticut Supreme Court as encompassing losses that are "measurable even though the precise amount of the loss is not known." Hinchliffe, 440 A.2d at 814.

"The burden of proving damages is on the party claiming them." Maguire, 1997 WL  at *6 (quotation omitted).  In the instant case, the Plaintiff has failed to specifically allege or prove any loss or injury suffered as a result of receiving Defendant's Letter. Although courts do not require a plaintiff to prove a specific amount of damages, courts do require that a plaintiff show the existence of some loss or injury. Maguire, 1997 WL  at *6.  "CUTPA is not designed to afford a remedy for trifles." Hinchliffe, 440 A.2d at 814.  Furthermore, CUTPA's ascertainable loss requirement applies to violations of the FDCPA, and courts in this district have consistently held that false communications alone, without further damage to a plaintiff, are insufficient to constitute an ascertainable loss. See Goins v. JBC & Assocs., P.C., 352 F.Supp.2d 262, 275 (D.Conn.2005); Maguire, 1997 WL at *6; Tragianese v. Blackmon, 993 F.Supp. 96, 100 (D.Conn.1997); Young v. Citicorp Retail Servs., Inc., 1997 WL 280508, at *6-7 (D.Conn.), aff'd,

159 F.3d 1349 (2d Cir.1998); Krutchkoff v. Fleet Bank, N.A., 960 F.Supp. 541, 550 (D.Conn.1996).

Despite the clear threshold requirements of the CUPTA, Plaintiff failed not only to allege the manner in which the Defendant's Letter violated the CUPTA, she also failed to offer any evidence to support her claim of damages caused as a result of Defendant's Letter. Thus, the Plaintiff has not met her "burden under CUTPA of offering evidence that any ascertainable loss of money or property was sustained as a result of the alleged misrepresentations." Consolidated Marketing Corp. v. Carol Cable Co., 1985 WL 5956, at *2 (D.Conn.) (internal quotation marks omitted). Accordingly, Plaintiff's claims under CUPTA should be dismissed.

WHEREFORE, Defendants request this Court to take the following actions:

(1) Dismiss the Complaint in its entirety; and

(2) Award Defendants its costs and fees incurred in bringing this Motion to Dismiss.

Dated:  November 3, 2010

SMITH, GAMBRELL & RUSSELL, LLP

Jonathan Kline, Esq.
Fed Bar No. ct 14791
250 Park Ave., Suite 1900
New York, NY 10177
Tel.: 212-907-9707
Fax: 212-907-9807
jkline@sgrlaw.com

Attorney for Defendant Enhanced Recovery
Corporation

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 3rd day of November, 2010, he caused a true and correct copy of the foregoing Motion to Dismiss to be sent via efiling and United States Mail, postage prepaid, to the following counsel of record:

> Theresa Rose DeGray
> 29 Soundview Road, Suite 11B
> Guilford, Connecticut 06437
> Attorney for Plaintiff

_____